UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE RESTRAINT OF TWENTY REAL
PROPERTIES IN CALIFORNIA AND
FLORIDA OWNED OR CONTROLLED BY
FABRICE TOUIL OR RICHARD TOUIL

No. 16-mc-1612 (CKK)

**MEMORANDUM OPINION AND ORDER**
(February 6, 2019)

Four entities have filed motions to intervene, vacate restraining orders, and, in one instance, dissolve a notice of lis pendens, pertaining to properties in California and Florida. ECF Nos. 27, 28, 29. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a

---

[1] The Court's consideration has focused on the following pleadings:

- Mem. in Supp. of Mot. of Ocean 26 Holdings LLC and Mondrian 1026 LLC to Intervene and Vacate Restraining Order, ECF No. 27 ("Intervenors' Mem."); Mem. in Supp. of Mot. of Ocean Five Office 400 LLC to Intervene, Vacate the Restraining Order and Dissolve the Notice of Lis Pendens, ECF No. 28; Mem. in Supp. of Real Estate 26 Investments LLC's Mot. to Intervene and Vacate Restraining Order, ECF No. 29;
- Resp. of the United States to Mot. to Vacate Restraining Order Re: 1040 Biscayne Blvd and 1100 West Avenue - Florida, ECF No. 37 ("U.S. Opp'n"); Resp. of the United States to Mot. to Vacate Restraining Order Re: 1150 Kane Concourse, Bay Harbor Florida [sic], ECF No. 38; Resp. of the United States to Mot. to Vacate Restraining Order Re: 2666 Hutton Drive, Beverly Hills, California, ECF No. 36;
- Am. Reply in Supp. of Mot. of Ocean 26 Holdings LLC and Mondrian 1026 LLC to Intervene and Vacate Restraining Order, ECF No. 44 ("Intervenors' Reply"); Reply in Supp. of Mot. of Ocean Five Office 400 LLC to Intervene and Vacate Restraining Order, ECF No. 43; Reply in Supp. of Mot. of Real Estate 26 Investments LLC to Intervene and Vacate Restraining Order, ECF No. 41;
- United States' Consolidated Surreply to the Replies of Proposed Intervenors Real Estate 26 Investments LLC, Ocean 26 Holdings LLC, Mondrian 1026, LLC, and Ocean Five Office 400 LLC, ECF No. 48 ("U.S. Surreply");
- Suppl. Reply in Supp. of Mots. of Ocean Five Office 400 LLC, Ocean 26 Holdings LLC and Mondrian 1026 LLC to Intervene and Vacate Restraining Order, ECF No. 49 ("Intervenors' Suppl. Reply"); and Suppl. Reply in Supp. of Mot. of Real Estate 26 Investments LLC to Intervene and Vacate Restraining Order, ECF No. 50.

1

whole, the Court shall **GRANT-IN-PART and DENY-IN-PART WITHOUT PREJUDICE** each of these motions.  These entities shall be permitted to intervene, but the Court shall not vacate the restraining orders or dissolve the notice of lis pendens at this time.

## I. BACKGROUND

On August 2, 2016, the United States moved *ex parte* for enforcement of French restraining orders against twenty real properties, including the four presently at issue: 1040 Biscayne Blvd., #3504, Miami, Florida 33132 ("1040 Biscayne"); 1100 West Avenue, #1026, Miami Beach, Florida 33139 ("1100 West Avenue"); 1150 Kane Concourse, #2FL, Bay Harbor, Florida 33154 ("1150 Kane Concourse, #2FL"); and 2666 Hutton Drive, Beverly Hills, California 90210 ("2666 Hutton").  A French court had imposed those restraints "to preserve specific property beneficially owned by Fabrice Touil or Richard Touil that is subject to confiscation (forfeiture) under French law in connection with a criminal investigation into the Touil brothers and others suspected of money laundering and other offenses in France."  Order, ECF No. 3, at 1-2.

On August 16, 2016, Judge Tanya S. Chutkan granted the United States' motion in pertinent part, enforcing the French restraining orders against these four properties and others.  Order, ECF No. 3, at 2-3.  With respect to 1150 Kane Concourse, #2FL, she excluded an annotation of this property as "legally described as condominium no. 3" because that description appeared in the United States' proposed order but not in other materials, including the French restraining order itself.  *Id.* at 2-3 & n.1.

Judge Chutkan also granted the United States' request to seal proceedings in this matter but required that notice of the Court's restraining order be given to "the suspects and any affected person, including the nominal corporate owners of record of the twenty properties."  Order, ECF No. 4.  Judge Chutkan lifted the seal on November 22, 2016, upon learning from the United States that, *inter alia*, "[b]oth Fabrice and Richard Touil have actual notice that the French Restraining

Orders are now in force in the United States." Ex Parte Mot. to Vacate Sealing Order, ECF No. 15, at 2; *see also* Order, ECF No. 17.

The United States indicates that Fabrice Touil appealed the French court's restraining orders as to 1040 Biscayne and 1100 West Avenue. U.S. Opp'n at 5 n.7. Those orders were confirmed by the Paris Court of Appeals. *Id.* at 5. While he evidently also appealed restraining orders as to some other properties, the United States is unaware of any appeals covering 1150 Kane Concourse, #2FL, or 2666 Hutton. Resp. of the United States to Mot. to Vacate Restraining Order Re: 1150 Kane Concourse, Bay Harbor Florida [sic], ECF No. 38, at 7 n.8; Resp. of the United States to Mot. to Vacate Restraining Order Re: 2666 Hutton Drive, Beverly Hills, California, ECF No. 36, at 5 n.6. At least some of the appeals he did file were abandoned. U.S. Opp'n at 5 & n.7. "The United States is unaware of any successful appeal as to any property." *Id.* at 5 n.7. Proposed Intervenors say nothing to the contrary.

On October 4, 2018, Ocean 26 Holdings LLC and Mondrian 1026 LLC together moved to intervene and vacate restraining orders as to 1040 Biscayne and 1100 West Avenue, which they allege that they respectively own. Proposed Intervenors Ocean 26 Holdings LLC's and Mondrian 1026 LLC's Mot. to Intervene and Vacate Restraining Order, ECF No. 27, at 1. Ocean Five Office 400 LLC separately filed a similar request with respect to its alleged property, 1150 Kane Concourse, #2FL. Proposed Intervenor Ocean Five Office 400 LLC's Mot. to Intervene, Vacate the Restraining Order and Dissolve the Notice of Lis Pendens, ECF No. 28, at 2. Real Estate 26 Investments LLC likewise moved as to its alleged holding, 2666 Hutton. Proposed Intervenor Real Estate 26 Investments LLC's Mot. to Intervene and Vacate Restraining Order, ECF No. 29, at 1. The Court shall refer to these four entities collectively as "Proposed Intervenors" or simply "Intervenors."

Upon reassignment of the case to this Court, during briefing of the pending motions, the Court permitted the United States to file a surreply, which the Proposed Intervenors responded to in supplemental replies. Although the Court did not grant Proposed Intervenors permission to make these supplemental filings, the Court shall consider the supplemental replies in any case because they are helpful to the resolution of the pending motions.

The United States indicates that Fabrice Touil's trial concluded on October 4, 2018, the date on which the Proposed Intervenors filed their motions, and that a verdict in Mr. Touil's case is expected on February 21, 2019. U.S. Opp'n at 2-3; U.S. Surreply at 2. Proposed Intervenors do not challenge either point.

The briefing having concluded, the pending motions are now ripe for resolution. The differences in briefing between the three separate motions generally do not affect the disposition of these motions. Accordingly, except where otherwise indicated, the Court shall cite the parties' briefing of the motion filed by Ocean 26 Holdings LLC and Mondrian 1026 LLC.

## II. LEGAL STANDARDS

### A. Motion to Intervene

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention as a matter of right. That provision provides, in relevant part, that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Consistent with this language, the United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") has recognized four criteria for intervention under Rule 24(a): "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair

4

that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (quoting *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998)) (internal quotation marks omitted).

In addition to these four requirements, which emanate from the text of Rule 24(a) itself, the Court understands that a putative intervenor must generally establish constitutional standing. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731-32 (D.C. Cir. 2003).[2] "To establish standing under Article III, a prospective intervenor — like any party — must show: (1) injury-in-fact, (2) causation, and (3) redressability." *Id.* at 732-33 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002)). With respect to the first prong of the Article III standing inquiry, the putative intervenor must show "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013) (citing *Lujan*, 504 U.S. at 560). Consideration of prudential standing issues may also be necessary to complete the Rule 24 inquiry. *See id.* at 194-95.

**B.  Motion to Vacate Restraining Order**

Under 28 U.S.C. § 2467, "the Government may apply for, and the court may issue, a restraining order at any time before or after the initiation of forfeiture proceedings by a foreign

---

[2] In the interest of streamlining this uncontested inquiry—indeed in the absence of any briefing regarding standing—the Court sidesteps some nuanced precedent about whether every putative intervenor must demonstrate Article III standing, as well as prudential standing or its equivalent, and how the applicable criteria should be characterized. *See, e.g.*, *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316, 319-20 (D.C. Cir. 2015); *cf. Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-28 (2014) (finding that "prudential standing" is not appropriate label for such considerations, and reframing "zone of interests" test). The Court need not go further down that road because the Court shall assume, *arguendo*, that it is necessary to establish both types of standing, or erstwhile standing, and shall find sufficient indicators that applicable criteria are satisfied.

5

nation." 28 U.S.C. § 2467(d)(3)(A)(i). For evidence, the U.S. court may consider, and ultimately "register and enforce a restraining order that has been issued by a court of competent jurisdiction in the foreign country and certified by the Attorney General." *Id.* § 2467(d)(3)(B)(ii). The court must ensure that its enforcement is "consistent with," among other things, the procedural protections in domestic civil forfeiture cases. *Id.* § 2467(d)(3)(A)(ii)(I) (citing 18 U.S.C. § 983(j)).

The parties do not identify any standards for vacating a restraining order once it has been issued pursuant to Section 2467(d)(3).[3] Rather, they focus on case law construing whether the applicable standards were met at the time the restraining order was issued in 2016. *See Gang Luan v. United States*, 722 F.3d 388 (D.C. Cir. 2013).

### III. DISCUSSION

**A. Motion to Intervene**

The Court must begin with the jurisdictional issue of Proposed Intervenors' Article III standing. The parties do not brief standing at all. But, for purposes of reaching the merits, the Court shall surmise the relevant arguments. As the alleged owners of the properties at issue, the Proposed Intervenors are injured by the inability to sell or do certain other things with their property. *See, e.g.*, Order, ECF No. 3, at 3-4 (listing prohibitions on, e.g., alienation of property interests absent court approval). They do not expressly *say* that they plan to sell the properties, but the Court does not see any other reason that they would request vacatur of the restraining orders on the relative eve of a verdict in Fabrice Touil's case. Proposed Intervenors' injury is imminent because the French verdict could include, or result in, a forfeiture order against Mr. Touil that would strip Proposed Intervenors of their properties. Vacatur of the restraining order would

---

[3] Section 2467(d) simply establishes what is *not* a proper grounds for challenging a restraining order issued under this statute. *See* 28 U.S.C. § 2467(d)(3)(C) ("No person may object to a restraining order under subparagraph (A) on any ground that is the subject of parallel litigation involving the same property that is pending in a foreign court.").

6

effectively permit the Proposed Intervenors to sell the properties now, in anticipation of an adverse French verdict. *See, e.g.*, Mot. to Seal Ex Parte Appl. to Register and Enforce Foreign Restraining Orders, ECF No. 1, at 1 (noting that "[s]ome assets previously acquired by the suspects have already been sold."). To be clear, the Court does not endorse such behavior, but the Court finds an injury-in-fact caused by Judge Chutkan's enforcement of the French restraining orders that could be redressed by vacatur of her order.

Because Proposed Intervenors have an interest in the disposition of properties that they allegedly own, but are currently restrained, the Court finds that they have also satisfied prudential standing considerations or their equivalent. *See Deutsche Bank Nat'l Trust Co.*, 717 F.3d at 194 (analogizing such considerations "to the concept embodied in Rule 24 that a proposed intervenor must have an interest 'relating to' the property or transaction at issue in the litigation"); *cf. Lexmark Int'l, Inc.*, 572 U.S. at 127-28 (reframing certain former considerations of prudential standing as whether plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue under" the relevant statute). The Court shall not delve here into an analysis of whether Congress intended for Proposed Intervenors to be able to sue under Section 2467. It suffices for these purposes to say that if anyone at all could challenge a restraining order enforced against Proposed Intervenors, it would be Proposed Intervenors, at the least.

Now that standing is established, the Court turns to the D.C. Circuit's standards for intervention as of right under Rule 24(a), which are easily satisfied. For these purposes, Proposed Intervenors' motion is timely, as the United States obtained enforcement *ex parte* and the offending restraints remain in place. The Court shall consider the tardiness of their substantive request further below. Proposed Intervenors furthermore assert interests in property they allegedly own. Maintenance of the restraining orders surely impairs these interests, insofar as Proposed

7

Intervenors are currently unable, for example, to alienate their real property. *See* Intervenors' Mem. at 6 (citing *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991) (recognizing "attachments, liens, and similar encumbrances" as "impairments to property rights" for due process purposes)). And finally, the United States, the only party currently participating in the proceedings, does not represent Proposed Intervenors' interest in lifting the restraining orders. Nevertheless, deferring to Proposed Intervenors' assertion of ownership, the United States does not oppose their intervention. U.S. Opp'n at 1 n.1.

Accordingly, the Court recognizes the Proposed Intervenors' intervention as of right.

**B. Motion to Vacate Restraining Order**

Turning to Intervenors' substantive request, the Court finds insufficient basis to disturb the restraint on their properties.

Judge Chutkan appeared to abide by the applicable standards for enforcing the French court's restraining orders. Of note, her Order expressly observes the necessity to abide by the procedural protections in Section 983(j), as incorporated into Section 2467. Order, ECF No. 3, at 2. Moreover, it appears that she carefully considered the United States' request, rather than rubber-stamping it. For example, she denied the United States' motion in part without prejudice as to certain other properties that were inadequately described in the French restraining orders. Order, ECF No. 3, at 5.

Nowhere in the pleadings do Intervenors explain why they are moving *now* to vacate restraining orders enforced in *August 2016*. Nor do they claim that they, or Fabrice Touil, only recently received the notice required by Judge Chutkan's sealing order, and recognized by her unsealing order. Nor do Intervenors explain the curious fact that, of the seventeen properties restrained by the Court's August 2016 order, they move only as to the four properties allegedly owned beneficially by Fabrice Touil, not as to any of the properties that Richard Touil allegedly

8

beneficially owns. *See* United States' Ex Parte Appl. to Register and Enforce Thirteen Foreign Restraining Orders Pursuant to 28 U.S.C. § 2467(d)(3) and 18 U.S.C. § 983(j), ECF No. 2, at 3; *see also* Resp. of the United States to Mot. to Vacate Restraining Order Re: 2666 Hutton Drive, Beverly Hills, California, ECF No. 36, at 5 (rebutting argument that Fabrice Touil is not the beneficial owner of 2666 Hutton). The timing and scope of their request raise concerns because the trial against Fabrice Touil evidently concluded on October 4, 2018, the same date that Intervenors filed the pending motions in this case.

On February 21, 2019, scarcely two weeks from today's date, the parties will learn whether Fabrice Touil is convicted in French court, which will almost certainly affect the proper disposition of the presently restrained assets. The Court has reason to believe that vacatur of Judge Chutkan's order before the verdict could facilitate the disappearance of these assets for purposes of any forfeiture obligations imposed on Fabrice Touil. *See, e.g.*, Mot. to Seal Ex Parte Appl. to Register and Enforce Foreign Restraining Orders, ECF No. 1, at 1 (observing prior sale of certain of suspects' assets, and opportunistic changes in nominal ownership of other assets).

The Intervenors' due process objections to waiting for the French verdict are unavailing. They do not cite any applicable authority for the notion that waiting until the French court delivers a verdict violates any constitutional rights that they or Fabrice Touil may have. Some of their authority suggests that an asset owner has a constitutional right to access at least certain types of assets to pay for counsel in a criminal proceeding. Intervenors' Reply at 8 (citing *Luis v. United States*, 136 S. Ct. 1083, 1088 (2016)). But Intervenors do not claim that they or Mr. Touil need the money from these assets to vindicate a Sixth Amendment right. Moreover, Intervenors do not contest the United States' representation that Mr. Touil appealed to a French court the French restraining orders as to at least some properties, and those orders were confirmed as to 1040

9

Biscayne and 1100 West Avenue. U.S. Opp'n at 5 & n.7; U.S. Surreply at 8. And the United States aptly notes that

> [T]he occupants of the restrained properties have not been evicted[,] and the major limitation on the titleholders is a prohibition on sale or encumbrance. The U.S. restraining order has only those features necessary to accomplish its ends of ensuring that the properties could be forfeited upon conviction and a final forfeiture judgment.

U.S. Surreply at 6 n.5. Accordingly, any lingering legitimate concerns should be assuaged by the limited scope of the present restraint.

Nor shall the Court revisit Judge Chutkan's decision to enforce the French restraining orders after consulting the standards under Sections 2467 and 983(j). Disposition of the pending motions does not require the Court to decide which of the parties' competing interpretations of *Gang Luan*, 722 F.3d 388, and other authorities appropriately construes procedural due process requirements under the applicable statutes, or to apply that interpretation to these facts. The Court simply notes that the allegations contained in the French court's restraining orders, upon which Judge Chutkan relied, were detailed. Soon enough, the United States and the Intervenors will learn whether the French verdict dictates continued U.S. enforcement of the French restraining orders, some of which were already confirmed by a French court of appeals.

### C. Motion to Dissolve the Notice of Lis Pendens

In addition to its motions to intervene and vacate the applicable restraining order, Ocean Five Office 400 LLC seeks dissolution of the notice of lis pendens applicable to 1150 Kane Concourse, #2FL. The basis for this further request is that Judge Chutkan struck the reference to "condominium no. 3" in the United States' proposed order restraining this property, but the United States nevertheless proceeded to file a notice of lis pendens as to that specific condominium at 1150 Kane Concourse, #2FL. *See* Mem. in Supp. of Mot. of Ocean Five Office 400 LLC to

Intervene, Vacate the Restraining Order and Dissolve the Notice of Lis Pendens, ECF No. 28, at 7-8.

But it is not true that the "action [supporting the lis pendens] no longer affects the subject property," as the owner contends. *Id.* at 8 (citing Fla. Stat. § 48.23(d)(3)). Judge Chutkan simply broadened the language in the United States' proposed restraining order, consistent with the majority of the materials that were in front of her. That does not mean that the notice of lis pendens as to a potentially narrower portion of 1150 Kane Concourse, #2FL, should now be dissolved. Only if Ocean Five Office 400 LLC were to say that it did not, and does not, own condominium number three, but instead owns only another part of the second floor, would the Court be inclined to dissolve the notice of lis pendens as to that specific condominium. Instead, the United States represents that "Condominium #3 comprises the second floor of 1150 Kane Concourse." Resp. of the United States to Mot. to Vacate Restraining Order Re: 1150 Kane Concourse, Bay Harbor Florida [sic], ECF No. 38, at 2 ("It is not a different property; it is simply a more descriptive address, which this Court deleted simply because it did not appear in the French seizure order."). Ocean Five Office 400 LLC does not disagree, suggesting that this motion to dissolve is frivolous.

Regardless, because of the concern that Ocean Five Office 400 LLC might proceed to sell 1150 Kane Concourse, #2FL, before the verdict, the Court shall not dissolve the notice of lis pendens as to that property at this time. Ocean Five Office 400 LLC has not cited any authority that requires dissolving the notice of lis pendens sooner, even if dissolution were justified, which the Court does not believe is the case.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS-IN-PART and DENIES-IN-PART WITHOUT PREJUDICE** Ocean 26 Holdings LLC's and Mondrian 1026 LLC's [27] Motion to Intervene and Vacate Restraining Order; Ocean Five Office 400 LLC's [28] Motion to

Intervene, Vacate the Restraining Order and Dissolve the Notice of Lis Pendens; and Real Estate 26 Investments LLC's [29] Motion to Intervene and Vacate Restraining Order.

Ocean 26 Holdings LLC, Mondrian 1026 LLC, Ocean Five Office 400 LLC, and Real Estate 26 Investments LLC shall be permitted to intervene. At this time, the Court shall not vacate the restraining orders as to any of the four properties, or dissolve the notice of lis pendens as to 1150 Kane Concourse, #2FL.

If Fabrice Touil is acquitted, or if a French court vacates or alters the restraining orders enforced by this Court, then Intervenors may renew their motion(s) to vacate the restraints upheld today.

**SO ORDERED.**

Dated: February 6, 2019

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge